## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

1:20-cv-24976

CEDARWOOD CAPITAL LLC,

    Plaintiff,

v.

USA CAPITAL FUND LLC,

    Defendant.

_____/

## COMPLAINT

Plaintiff, Cedarwood Capital LLC, sues Defendant, USA Capital Fund LLC, and states:

### I. Parties, Jurisdiction, and Venue

1.    Plaintiff is a limited liability company organized and existing under the laws of the state of New York.

2.    Plaintiff's headquarters and principal place of business are in New York.

3.    Each member of Plaintiff is a citizen only of New York.

4.    Defendant, which conducts business in its proper name and as USA Medical Supply, is a limited liability company organized and existing under the laws of Florida.

5.    Defendant's headquarters and principal place of business are in Hollywood, Broward County, Florida, within the territorial jurisdiction of the Southern District of Florida.

6.    On information and belief, including a good-faith investigation of publicly

available sources, *see RT-Destin Assocs. LLC v. Nexpoint Real Estate Advisors LP*, No. 3:20CV5616-MCR/EMT, 2020 WL 6505014, at *2 (N.D. Fla. Nov. 5, 2020) (citing *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 108-110 (3d Cir. 2015)), Defendant does not have a member that is a citizen of New York.

7. Defendant committed the contractual breach and deceptive and unfair trade practices alleged herein in Florida.

8. A sum far in excess of $75,000.00, exclusive of costs, fees, and interest, is at issue.

9. Based on the foregoing, this Court has jurisdiction pursuant to 28 U.S.C. § 1332.

10. Based on the foregoing, venue is proper and convenient in the Southern District of Florida pursuant to 28 U.S.C. § 1391 because Defendant engages, and at all times material hereto did engage, in substantial and not-isolated business in the district; maintains, and at all times material hereto maintained, its principal place of business in the district; and committed the acts and omissions giving rise to this action within the district.

## II. General Allegations

11. Plaintiff incorporates by reference Paragraphs 1 through 10 as though fully set forth herein.

12. Plaintiff and Defendant are distributors of personal protective equipment ("PPE") utilized by healthcare workers and others in the fight against the COVID-19 pandemic.

13. Plaintiff began negotiating the purchase of PPE, in the form of medical gowns utilized in hospitals and other healthcare settings, from Defendant in late April of 2020.

14.     On April 27th,[1] Defendant invoiced Plaintiff for 1 million medical gowns at $3.30 per gown, or $3.3 million total. The invoice is attached hereto as **EXHIBIT 1**. The invoice further states, *inter alia,* that "[a]ll items are FDA Approved" and warns Plaintiff that there are "[n]o cancellations."

15.     Prior to and following Defendant sending this invoice to Plaintiff, Plaintiff informed Defendant that because the gowns were to be used in the protection of healthcare workers, they must strictly conform with the safety and quality requirements of Plaintiff's ultimate customers, which requirements are informed by standards for PPE as recognized in the healthcare industry and by the United States Food and Drug Administration ("FDA").

16.     In negotiating and forming the agreement alleged herein, Plaintiff and Defendant at all material times understood and agreed as to what constituted a "Level 4 isolation gown" (interchangeably: "Level 4 gown").

17.     Plaintiff, in pre-contract negotiations, indicated it was requiring:

   a. That all 1 million units to be purchased be Level 4 isolation gowns;
   b. That Defendant was responsible for providing appropriate documentation certifying the units as Level 4 gowns and certifying their manufacturer, of which Plaintiff must approve;
   c. That, given rapid price fluctuation in the PPE market, time was of the essence in gown delivery, and, as such, the gowns must be delivered precisely when promised.

18.     In response to Plaintiff's demands and to induce Plaintiff to purchase its product, Defendant assured Plaintiff that:

---

[1] All dates contained herein refer to the year 2020.

    a. All 1 million units it would be selling to Plaintiff were Level 4 isolation gowns[2] that were manufactured by Shandong Rientech Medical Technology Co., Ltd.;

    b. Half—$1.65 million—of the agreed $3.3 million purchase price would be upfront;

    c. The remining $1.65 million would be paid upon all 1 million units arriving at United States Customs; and that

    d. The gowns would arrive at Plaintiff's designated facility in the United States within five to seven business days of Plaintiff's upfront payment.

19. Based on Defendant's unequivocal assurances as indicated above, Plaintiff agreed to purchase the gowns under the delineated terms.

20. Plaintiff wired Defendant the $1.65 million upfront payment in two installments, on April 27th and April 28th. This payment constituted Plaintiff's acceptance of Defendant's offer to sell what Defendant affirmatively represented was 1 million Level 4 isolation gowns manufactured by Shandong Rientech Medical Technology Co., Ltd., to be delivered within five to seven business days of this initial payment.

21. Within five to seven business days of that April 27th/28th wire transfer—i.e., by May 7th at the latest—Defendant, per the parties' agreement, was to have delivered the 1 million Level 4 isolation gowns, bearing the appropriate certification, to Plaintiff's designated

---

[2] As concerns Plaintiff's customers, all Level 4 gowns are acceptable for Level 2 or Level 3 use. Level 4 gowns essentially do everything Level 2 or 3 gowns do, but provide a higher level of protection. One customer of Plaintiff wanted to see documentation that the Level 4 gowns would suffice for Level 2 use, and so Plaintiff asked that this be indicated on the invoice from Defendant. Thus, Defendant wrote "Level 2-4" on the invoice, while continually assuring Plaintiff that all 1 million gowns were indeed Level 4 gowns. *See* Invoice, referenced *supra* and attached hereto as **EXHIBIT 1**; *see also* April 26, 2020 Correspondence from USA Capital Fund LLC agent Eli Rouimi to Plaintiff, attached hereto as **EXHIBIT 2** ("The gown were sending you [sic] is level 4 so is also level 2 but ill [sic] add level 2-4 to the invoice.").

facility.

22. Pursuant to the agreement, only when the aforementioned delivery had arrived at United States Customs was Plaintiff supposed to wire Defendant the $1.65 million balance.

23. Defendant ultimately failed to deliver even one gown that conformed with the agreement.

24. On or about April 29th, Plaintiff called Defendant to ensure the order would not be delayed due to the May 1st Chinese holiday.

25. Plaintiff made this call because, as the parties knew when consummating the deal, time was of the essence in that the cost of PPE in the United States at that time was fluctuating wildly such that a profit on a product if delivered on one day could be a loss on the product if delivered the next.

26. In response to this inquiry, Defendant lied to Plaintiff, telling Plaintiff that the Chinese holiday would not affect delivery because Defendant used its own chartered planes in transport.

27. The next week, however, Defendant claimed that the shipment was delayed due to the Chinese holiday.

28. While Plaintiff awaited shipment of the goods, Defendant told Plaintiff it would send Plaintiff a proof-of-life video of the actual gowns purchased by Plaintiff when the gowns were at United States Customs. Defendant never sent the video to Plaintiff.

29. On May 12th—five days after the gowns were due at Plaintiff's designated facility—Defendant told Plaintiff that while it still could not provide the promised proof-of-life video from customs, it could provide such a video of the goods as they sat on a delivery truck. Defendant never provided this video, either.

30. On May 14th, Defendant claimed that it was, on that day, delivering 640,000 of the 1 million units (all 1 million of which were supposed to have been delivered eight days earlier, by May 7th) to the warehouse chosen by Plaintiff.

31. These gowns came straight from the airline and were not placed on pallets, as had been promised. Commissioning the warehouse to palletize the load caused Plaintiff to incur thousands of dollars in additional costs.

32. More problematic was that, per the third-party warehouse's count on May 15th, only 422,000 gowns—218,000 gowns short of the 640,000 that Defendant falsely claimed it delivered—were actually delivered.

33. Moreover, none of the 422,000 gowns were manufactured by the company—Shandong Rientech Medical Technology Co., Ltd.—that Defendant represented had manufactured all 1 million gowns.

34. Far worse, as Plaintiff would later discover, the 422,000 units were not Level 4 gowns as promised, but Level 3 gowns, which are almost worthless to Plaintiff because its clients, save for one smaller-volume client, have no interest in purchasing Level 3 gowns.

35. On May 18th, Plaintiff again informed Defendant that Plaintiff had only received 422,000 of the supposedly delivered 640,000 gowns, and that Plaintiff still lacked appropriate documentation as to any of the gowns.

36. Instead of apologizing for failing to perform, Defendant (1) demanded that Plaintiff pay the second $1.65 million installment (even thought it was not due, as the owed 1 million gowns had not been delivered as agreed) and (2) unfoundedly accused Plaintiff of theft in an effort to deflect from Defendant's own contractual breach and deceptive and unfair trade practices.

37. Defendant then ramped up its fraudulent conduct by sending Plaintiff doctored emails purporting to show that the cargo airline that delivered the product agreed with Defendant's contention that 640,000 units, rather than the 422,000 counted by the third-party warehouse, had been delivered.

38. Despite these fake emails claiming that the airline supposedly agreed that 640,000 gowns were delivered, Defendant eventually changed its tune and claimed that 438,800 gowns were delivered.

39. In actuality, only 422,000 gowns—none of which were Level 4 gowns and none of which were manufactured by Shandong Rientech Medical Technology Co., Ltd.—were delivered, as proven by the third-party warehouse.

40. Before September 2nd, Plaintiff could not, lawfully or morally, even attempt to resell the gowns, the ultimate consumers of which would be healthcare workers under exposure to COVID-19, as Defendant before that date continually refused to provide documentation reflecting at what protection level the units had been certified.

41. On September 2nd, Defendant finally provided certifications for delivered product. The certification proved the 422,000 units were actually Level 3 or below gowns—i.e., were virtually worthless to Plaintiff and outside of its capability to sell even if Defendant *had* timely provided the certification documents for these nonconforming units.

42. As Plaintiff learned through the course of dealing with Defendant, Defendant's false pre-contract-formation claims were designed to induce Plaintiff to purchase the putative product from Defendant even though Defendant knew, or reasonably should have known, that it could not actually deliver the demanded goods.

43. The post-April 27th (post-contract-formation) claims by Defendant were

designed to disguise the fact that Defendant could not comply with its contractual obligation to deliver 1 million verified Level 4 gowns to Plaintiff on or before May 7th. They were designed, further, to induce Plaintiff to pay the remaining $1.65 million of the $3.3 million contract price—even though the act that was supposed to trigger the remaining $1.65 million payment (delivery of 1 million conforming units) had yet to (and still has yet to) occur and even though Plaintiff never received close to the $1.65 million worth of product (500,000 Level 4 gowns manufactured by Shandong Rientech Medical Technology Co., Ltd.) for which it had already paid.

44. Since May, Plaintiff has continually demanded a refund from Defendant on account of not receiving the contracted-for product.

45. Even whilst admitting that it has not delivered even half of the 1 million contracted-for gowns and admitting that none of the 422,000 delivered units are certified Level 4 gowns, Defendant refuses to provide a refund of the $1.65 million paid by Plaintiff to Defendant.

46. Defendant's actions have caused substantial and accumulating damages to Plaintiff.

47. Plaintiff had arranged, and/or would have arranged, to resell the entirety of the promised 1 million Level 4 gowns manufactured by Shandong Rientech Medical Technology Co., Ltd., which Plaintiff bought for $3.30 each, or $3.3 million total, for $5.25 each, or $5.25 million total. As a direct and proximate result of Defendant's failure to deliver conforming gowns, Plaintiff could not conclude these sales. Accordingly, Defendant's failure to timely deliver the promised and contracted-for product cost Plaintiff $1.95 million ($5.25 million resale price minus $3.3 million purchase price) in profit.

48. Moreover, Plaintiff paid $1.65 million to Defendant for half of the 1 million units, and Defendant has delivered zero conforming gowns. Plaintiff is unable to resell any of these nonconforming gowns, as (1) Defendant just recently provided certification documents for these gowns that would enable resale even if Plaintiff had the capability to resell the product; (2) none of Plaintiff's potential customers want Level 3 gowns in any event; and (3) the needs of the one smaller-volume customer who wanted Level 2 gowns (for which a certified Level 3 gown would be appropriate) expired long before Plaintiff received the certifications on September 2nd. Accordingly, due to Defendant's breach of its contractual obligations, exacerbated by its deceptive and unfair trade practices, Plaintiff has incurred $1.65 million, plus palletizing and warehousing costs for unsalable products, in out-of-pocket damages.

49. In sum, Defendant's breach of contract and deceptive and unfair trade practices have cost Plaintiff more than $3.6 million ($1.65 million in unsalable product purchased, plus warehousing and palletizing costs, plus $1.95 million in lost profits) to date.

50. These damages are continuing in nature and are liable to increase if Defendant refuses to refund Plaintiff's money and Plaintiff is continually unable to sell products that Defendant dumped upon Plaintiff via unscrupulous trade practices and dishonor of contractual obligations.

### III. Claims

#### COUNT 1: BREACH OF CONTRACT

51. Plaintiff incorporates by reference Paragraphs 11 through 50 as though fully set forth herein.

52. Defendant offered to sell Plaintiff 1 million certified Level 4 isolation gowns,

to be delivered to Plaintiff on or before May 7, 2020 at a United States warehouse, with half of the $3.3 million purchase price to be paid upfront and the remaining half to be tendered upon arrival of the 1 million conforming units at United States Customs.

53. Plaintiff timely accepted this offer by tendering the upfront payment of $1.65 million in two installments.

54. Valuable consideration—product from Defendant, money from Plaintiff—supported the contract.

55. Plaintiff performed under the contract at all times, without breach.

56. Defendant breached the valid, enforceable contract by failing to deliver a product that conformed to the agreement, failing to deliver the correct quantity of product, and failing to deliver the product timely.

57. As a direct and proximate result of Defendant's breach of the contract, Plaintiff sustained the damages delineated in Paragraphs 47 through 49, *supra.*

WHEREFORE, Plaintiff respectfully prays that the Court ender judgment finding Defendant in breach of contract, awarding monetary damages to Plaintiff, and providing any other and further relief the Court deems just and proper.

### COUNT 2: VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. § 501.201 *ET SEQ.*

58. Plaintiff incorporates by reference Paragraphs 11 through 50 as though fully set forth herein.

59. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.,* was promulgated to "protect…legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or

practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

60. Defendant is liable under FDUTPA if Plaintiff proves (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages.

61. At all material times, and as to all dealings with Plaintiff and actions taken by Defendant as alleged herein, Defendant was engaged in commerce in Florida.

62. In conducting such commerce, Defendant engaged in, *inter alia*, the following deceptive acts or unfair practices:

   a. Inducing Plaintiff to form a contract with Defendant by falsely representing that it possessed or could readily ascertain 1 million certified Level 4 isolation gowns from Shandong Rientech Medical Technology Co., Ltd.;

   b. Inducing Plaintiff to form a contract with Defendant by falsely representing that it could deliver the aforementioned product to Plaintiff in the United States by May 7, 2020;

   c. After the contract was formed, falsely and continually representing to Plaintiff that it could meet the terms thereof, in terms of both quantity and conformity of goods;

   d. Claiming it had the ability to provide Plaintiff proof-of-life video of the gowns designated for Plaintiff, whilst knowing it had no such ability;

   e. Claiming it was sending proof-of-life video to Plaintiff, with no intention of actually sending such video;

   f. Claiming that the May 1st Chinese holiday would not affect delivery of the gowns, when in fact Defendant knew the holiday would significantly delay same;

    g. Falsely claiming it had delivered 640,000 units to Plaintiff, when it had in fact delivered only 422,000 units;

    h. Creating fraudulent documents purporting to prove delivery of 640,000 units;

    i. Falsely accusing Plaintiff of theft to distract from its own unscrupulous business practices;

    j. Representing that the 422,000 gowns it delivered were manufactured by Shandong Rientech Medical Technology Co., Ltd., which Defendant knew to be false;

    k. Falsely representing that the 422,000 units it delivered were Level 4 isolation gowns; and

    l. Recklessly, or knowingly falsely, representing to Plaintiff, on multiple occasions prior to September 2, 2020, that it was delivering certification that the delivered units were Level 4 gowns, then willfully failing to deliver such certification.

63. Defendant's deceptive acts or unfair practices proximately caused the damages delineated in Paragraphs 47 through 49, *supra*.

WHEREFORE, Plaintiff respectfully prays that the Court ender judgment finding Defendant liable for deceptive and unfair trade practices in violation of Florida law, awarding monetary damages to Plaintiff, awarding costs and attorney's fees to Plaintiff as the prevailing party, and providing any other and further relief the Court deems just and proper.

### IV. Jury Trial Demand

Plaintiff demands a trial by jury as to all issues so triable.

Respectfully Submitted by:

/s/ *[signature]*

**Mason Kerns** (FBN 91754)
mason@masonkernslaw.com
krystal@masonkernslaw.com
pleadings@masonkernslaw.com
**Jeremy H. Block** (FBN 121783)
jeremy@masonkernslaw.com

*for*

**MASON KERNS LAW** PA
*Attorneys for Cedarwood Capital LLC*
1814 Southwest 22nd Avenue, Suite 6
Miami, Florida 33145
P 305.726.5140 | F 305.422.0400

# Exhibit 1



# Cedarwood Capital - Sam Gowns

| | | |
|---|---|---|
| **Cedarwood Capital LLC / Hudson Hills Senior Living c/o The Boulevard** | **Sam Tennenbaum** | **Reference: 20200426-182608533** |
| | sam@sagehcp.com | Prepared: April 26, 2020 |
| | 917-817-2744 | Expires: April 27, 2020 |
| 3167 John F Kennedy Blvd. | | Prepared by: Eli Rouimi |
| North Bergen, NJ 07047 | | CEO |
| United States | | eli@usamedicalsupply.org |

## Products & Services

| Item & Description | SKU | Quantity | Unit Price | Total |
|---|---|---|---|---|
| Surgical Gown CPE<br>Level 2-4 | usams_cpe_1500 | 1000000 | $3.30 | $3,300,000.00 |

## Subtotals

| | |
|---|---|
| One-time subtotal | $3,300,000.00 |

| | |
|---|---|
| Total | $3,300,000.00 |

## Purchase Terms

Payment Terms: 50% upfront, 50% upon delivery in US Customs.
All Items are FDA Approved.
Shipping : Approx 5-7 business days from receipt of cleared payment
No cancellations
Final Invoice

## Questions? Contact me



Eli Rouimi
CEO
eli@usamedicalsupply.org

USA Medical Supply

2450 Hollywood Blvd. , Suite 503

Hollywood, FL 33020

United States

# Exhibit 2

On Sun, Apr 26, 2020 at 11:19 PM Eli Rouimi <eli@usamedicalsupply.org> wrote:

> The gown were sending you is level 4 so is also level 2 but ill add level 2-4 to the invoice.
>
> Here it is : https://app.hubspot.com/quotes/7AwI9figThStoQSD7Dxt